UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHURCH OF THE WORD, a Missouri Benevolent Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ST. LOUIS COUNTY, COUNTY EXECUTIVE, DR. SAM PAGE, in his official capacity only,<br><br>ST. LOUIS COUNTY, ACTING DIRECTOR, CHIEF MEDICAL OFFICER, DEPARTMENT OF PUBLIC HEALTH, DR. EMILY DOUCETTE, in her official capacity only,<br><br>Defendants. | Cause No.: |

**VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT
AND INJUNCTIVE RELIEF**

COMES NOW Plaintiff Church of the Word, a Missouri Benevolent Corporation ("Plaintiff"), through counsel, and for their Complaint against St. Louis County, Missouri County Executive, Dr. Sam Page, in his official capacity, and St. Louis County Chief Medical Officer and/or Director of Public Health, Dr. Emily Doucette, in her official capacity (jointly, "Defendants"), states as follows:

**EXIGENT CIRCUMSTANCES REQUIRE A TEMPORARY RESTRAINING ORDER**

1. The State of Missouri, St. Louis County, and the entire world is affected by the COVID-19 virus pandemic. In response, St. Louis County Executive Dr. Sam Page has issued a series of executive orders ("EO"), including: EO 10 on March 13, 2020, EO 11 on March 15,

1

2020, EO 14 on March 18, 2020, EO 15 on March 21, 2020 and EO 17 on April 22, 2020. They are attached as Exhibit 1, Exhibit 2, Exhibit 3, Exhibit 4 and Exhibit 5.

2. Under EO 17, there is no expiration date. It further provides that rules, policies and guidance of the Department of Public Health have the "force of law."

3. On March 18, 2020, Dr. Emily Doucette, the acting director and/or chief medical director of the St. Louis County Department of Public Health, issued an order, which is attached as Exhibit 6. On April 22, 2020, Dr. Emily Doucette, issue an amended or restated order, which is attached as Exhibit 7 ("Dr. Doucette's Order") and which has no expiration date.

4. Exhibits 1-7 are collectively referred to as "Orders."

5. Plaintiff brings this suit to challenge the Orders, particularly the current orders reflected in Exhibit 5 and Exhibit 7, respectively as being unconstitutional as-applied to Plaintiff, because they treat religious gatherings less favorably than similar secular gatherings, essentially ban religious assembly, are not narrowly tailored, and do not permit less restrictive means to achieve the government's interest without burdening Plaintiff's rights as guaranteed by the US Constitution's First Amendment.

6. The Orders have been interpreted, applied, and/or enforced by Defendants' office(s) as prohibiting indoor gatherings for religious worship by more than ten (10) people.

7. The Orders are not neutral laws of general applicability because they target Constitutionally protected activity, significantly burden the Plaintiff's right to freedom of religion and assembly, while providing broad exemptions for many other gatherings of more than ten (10) people that are not Constitutionally protected.

8. Without emergency relief from this Court, Plaintiff, and all members of Plaintiff, will suffer immediate and irreparable injury from the threat of civil liability and criminal

prosecution from the mere act of gathering for the free exercise of religion and in assembling for religious worship.

## PARTIES

9. Plaintiff was incorporated under Chapter 352, RSMo on or about October 27, 1964. Plaintiff was formerly known as "Bethesda Faith Temple." *See* Exhibit 8, Plaintiff's Articles of Incorporation. On or about October 26, 2017, Plaintiff changed its name to "Church of the Word." *See* Exhibit 9, Plaintiff's Amended or Restated Charter and Articles of Agreement.

10. Dr. Sam Page is the duly selected and serving County Executive of St. Louis County. Plaintiff sues Dr. Sam Page in his official capacity only.

11. Dr. Emily Doucette is the duly selected and serving Acting Director, Chief Medical Officer, Department of Health of St. Louis County. Plaintiff sues Dr. Emily Doucette in her official capacity only.

## JURISDICTION, COLOR OF STATE LAW AND VENUE

12. This civil rights action raises federal questions under the United States Constitution, specifically the First and Fourteenth Amendments, and is brought pursuant to 42 U.S.C. § 1983. At all relevant times, Defendants acted under color of state law. Particularly, at all relevant times, each Defendant has been and is acting under color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the State of Missouri, and/or its political subdivisions.

13. This Court has jurisdiction over Plaintiff's federal claims under U.S. Const., Art. III, Sec. 2, and under 28 U.S.C. § 1331 and 1343.

14. This Court has authority to grant the requested declaratory relief under 28 U.S.C. §§ 2201 and 2202, the requested injunctive relief under 28 U.S.C. § 1343, and reasonable attorney fees and costs under 42 U.S.C. § 1988.

15. Venue is proper in this Court under 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants reside in this district, Plaintiff resides and carries on its activities in this district, and Plaintiff resides and/or is incorporated in the State of Missouri.

## FACTS COMMON TO ALL COUNTS

16. Plaintiff was organized and carries on its activities exclusively for religious purposes.

17. Plaintiff is a non-denominational Christian Church. Plaintiff has adopted as its confession of faith the Gospel Coalition Confession of Faith, a true and correct copy of which is contained in <u>Exhibit 10</u>. Many Presbyterians and Baptists also subscribe to the Gospel Coalition Confession of Faith.

18. A true and correct copy of Plaintiff's Church Constitution is contained in <u>Exhibit 11</u>.

19. Matthew Sheffer is one of Plaintiff's Elders. He is also its Teaching Pastor. Jerry Suermann and Steven Benner are also Elders. Matthew Sheffer, Jerry Suermann and Steven Benner operate and govern Plaintiff.

20. Plaintiff is independent. It does not belong to any hierarchal organization or structure. It has one location, discussed below.

21. Plaintiff has conducted its religious activities, services and ministry since 1969. It has acted exclusively in St. Louis County since approximately 1975.

22. Plaintiff conducts in-person services and in-person religious worship (jointly, "Gatherings") weekly on Sunday.

23. To become a member of, and maintain membership with, Plaintiff's congregation, regular attendance at Gatherings is required. Membership may be terminated for failure to regularly attend Gatherings. Accordingly, it has significant ecclesiastical importance.

24. Gatherings are fundamental to Plaintiff's religion. The purpose of the Gatherings is principally for members to be together in-person. Gatherings start every Sunday at 10:30am and members typically stay until 2:00pm or later.

25. Certain aspects of the Gatherings can only be conducted in-person. Congregational singing is difficult or impossible other than in-person. *See* Ephesians 5:19-20 (ESV) ([19] addressing one another in psalms and hymns and spiritual songs, singing and making melody to the Lord with your heart, [20] giving thanks always and for everything to God the Father in the name of our Lord Jesus Christ). Further, Plaintiff believes that failure to assemble in-person is a sin and violation of God's commands as they interpret the *Holy Bible* in such verses as Hebrews 10:24-25, Acts 2:42, Matthew 28:19-20.

26. Plaintiff believes communion must be done in-person. The physical breaking of the bread, the physical sharing of the cup, the "hedging" of the communion table, and the administration of communion – which consists of unleavened Passover bread and fruit of the vine – by elders or pastors are fundamental to Plaintiff's faith and must be done in-person. "Hedging" is the protecting of the communion table against non-believers and members not in good standing, neither of whom may receive communion. Hedging cannot be done through remote communications. Communion is an ordinance of covenant remembrance in that it typifies the sacrifice of the Lord Jesus Christ's body and blood. He is spiritually and judicially present.

Plaintiff and its members partake in-person as a body, remember their redemption and covenant, pray together, physically embrace at times, and examine and judge themselves together in-person.

27. Plaintiff's "fellowship meals," historically known as "the agape feast" or "love feast," must be done in-person and consists of a shared meal between members. Plaintiff has conducted fellowship meals every Sunday since 2005 until the Orders suspended and/or limited them. Before 2005, they were conducted on a monthly basis for decades.

28. Plaintiff believes some types of evangelization must be done in-person at Gatherings. Plaintiff believes that it has an obligation to evangelize non-believers. As such, non-believers are invited to Gatherings to hear Plaintiff's message and make in-person, personal connections. *See* Matthew 28:19-20.

29. Gatherings are a critical tool when performing Plaintiff's mission to "support the weak." Plaintiff believes that in-person social interaction of the congregation helps members' spirituality, depression and loneliness. For instance, before the Orders, a young individual attended Gatherings and was noticeably affected in a positive way. He had recently completed rehab and procured a job. After the Orders, he passed away from a drug overdose. Plaintiff strongly believes they could have helped this young individual had they been allowed to continue Gatherings.

30. For years before the Orders, approximately fifty to seventy (50-70) people attended Gatherings on a weekly basis. The Gatherings further permit and allow Plaintiff to more effectively solicit and receive donations in-person to support their religious mission.

31. Gatherings are conducted at Plaintiff's sole location: 801 Hawkins, Fenton, Missouri 63026. The church building has seating capacity for approximately one-hundred and

sixty-two people (162), although as currently constituted it seats one-hundred and twenty (120) in the sanctuary. The church building is approximately 3,200 square feet, but the sanctuary – the only place where Gatherings may be conducted consistent with Plaintiff's religions tenets – is smaller and around 1,600 square feet.

32. As a result of the Orders, Plaintiff has been prohibited from conducting Gatherings in-person and in a manner consistent with its sincerely held religious tenets, beliefs, customs and mission. Gatherings are suspended or conducted under threat of liability because of the Orders. On one occasion, the police were called on Plaintiff when it was conducting a religious service, intimating and reinforcing that Plaintiff's Gatherings and/or religious activities could not be conducted in-person and inside the church building.

33. Nevertheless, Plaintiff attempted to peaceably comply with the Orders that have limited Gatherings, and other religious activities, to ten (10) people or forced them to hold much less acceptable electronic meetings – all of which significantly cheapen and substantially burden the religious exercise – in furtherance of their strong interest in protecting its members, and assurances from Defendants that the current restrictions would be temporary. Technology, like Zoom, is not available to all of Plaintiff's members or potential members and is not an adequate substitute for Gatherings.

34. To avoid the risk of imminent criminal and civil liability, Plaintiff is now compelled to challenge the Orders in light of the glaring disparate, unequal, discriminatory, disfavored, hostile and restrictive treatment of Plaintiff's religious and other First Amendment gatherings over other, secular gatherings – like at grocery stores, storage centers and hardware stores; its members' need comfort from their church and they have been forced to remain in their homes for months; the ever-lengthening infringement by the Orders upon their God-commanded

duty to assemble and congregate in their house of worship; and its concern over the government's interference in the form and method of its most important ecclesiastical function – religious worship.

35. Under EO 17 on April 22, 2020:

> The Director of the Department of Public Health shall impose the restrictions described herein and shall continue to impose those restrictions until she deems that such restrictions are no longer necessary to protect public health and safety.

*See* Exhibit 5, ¶ 1. Such "rules, orders, or policies so promulgated shall have the force of law to the greatest extent permitted by federal, state, and county law" *Id.*, ¶ 2. EO 17 is indefinite and only expires "only upon further order." *Id.*, ¶ 3.

36. Dr. Doucette's Order suggestion or states that any violation of its terms constitutes a Class A Misdemeanor pursuant to § 192.320, RSMo. *See* Exhibit 7, page 1. The County Counselor is also authorized to take additional enforcement measures. *Id.*, IV(I).

37. Dr. Doucette's Order defines "churches, religious services, and other spiritual practices" as an "essential business" only to the extent "consistent with reasonable compliance with Social Distancing Requirements and gathering size limitations." *Id*, III(F)(27).

38. It defines participation in "religious services and other spiritual practices" as an "essential activity" but only to the extent "consistent with reasonable compliance with Social Distancing Requirements and gathering size limitations." *Id.*, III(E)(7). "Gathering size limitations" is not expressly defined.

39. "Social Distancing Requirements" means, among other things, maintaining at least six (6) feet between individuals, washing hands with soap as frequently as possible for at least twenty (20) seconds, and not shaking hands. *Id.*, III(U).

40. A "prohibited activity" includes "any gathering of ten or more people in a single space or room, unless specifically permitted" otherwise. *Id.* III(S)(1). "Single space" and "room" are not expressly identified and are vague because an average person of common intelligence cannot reasonably know what these terms mean in the context of the Orders.

41. A "gathering" is when "people come together as a group, whether formal or informal and whether public or private." *Id.*, III(K).

42. No business, including an "essential business," may engage in a "prohibited activity." *Id*, IV(C)(3).

43. Given the size of Plaintiff's church building and the sanctuary, it is impossible to comply with Social Distancing Requirements and conduct a Gathering that includes its typical fifty to seventy members, particularly the mandate that six (6) feet be maintained between members.

44. Plaintiff's Gathering is a "prohibited activity" because it usually includes a gathering of more than ten (10) people within the church building.

45. Accordingly, because Plaintiff cannot reasonably comply with Social Distancing Requirements and gathering size limitations, it is not an "essential business" and has been compelled to cease its religious exercise to the detriment of its members, beliefs and mission.

46. As described above, the Orders, and especially Dr. Doucette's Order, plainly and palpably invade Plaintiff's rights under the First Amendment, significantly inhibit or constrain religious conduct, meaningfully curtail the ability of Plaintiff's members to express adherence to their faith, and deny a reasonable opportunity to engage in activities that are fundamental to its religion.

47. Specifically, Plaintiff's religious mission and activities, including, without limitation, its members' religious obligations, the ability to conduct a Gathering, Plaintiff's ability to solicit donations in-person at Gatherings to further its mission, the ability to conduct communion, the ability to grow and expand its faith, evangelization, its mission to "support the weak," its ability to conduct "fellowship meals," its ability to gather in-person and "hedge" the communion table, engage in congregational singing and otherwise further its religious purposes are all impaired, substantially burdened and/or prohibited by the Orders.

48. Dr. Doucette's Order contains no emergency, social distancing, or temporal exceptions for Plaintiff, or other similarly situated religious entities, to conduct Gatherings. To the extent the Orders are voluntarily repealed or rescinded in the near future, Plaintiff is concerned and has a reasonable expectation that they could be reinstituted on concerns of a "second wave" of COVID-19.

49. Dr. Doucette's Order exempts numerous secular, non-religious entities. *Id.*, IV(F).

50. Moreover, numerous "essential activities" and "essential business," like grocery stores, certain storage businesses and hardware stores, do not have the same restrictions as Plaintiff.

### COUNT I – (U.S. CONST., FIRST AND FOURTEENTH AMENDMENT – FREE EXERCISE)

51. Plaintiff incorporates all other Paragraphs of this Complaint as if fully set forth herein.

52. The First Amendment of the United States Constitution provides that "Congress shall make no law… prohibiting the free exercise [of religion]." Under the Fourteenth Amendment, this prohibits every level of state and local government from making a law prohibiting the free exercise of religion.

53. As-applied to Plaintiff, the Order Violates Plaintiff's First Amendment Free Exercise and Assembly Clause rights because they:

    a. Constitute overbroad restrictions and substantial, undue burdens on the Plaintiff's rights to participate in the Gatherings and to assemble to exercise their religious belief that they must worship together as a religious body as commanded by the *Holy Bible*;

    b. Place more stringent restrictions and substantial burdens on Plaintiff's Gatherings than they place on a wide range of secular businesses such as grocery stores and hardware stores; and

    c. Are not narrowly tailored, or the least restrictive means to accomplish a compelling governmental interest.

54. The Orders exempt from their ban on gatherings a large number of secular businesses and activities that are not protected by the Constitution, while not providing a sufficiently equivalent exemption for Plaintiff's First Amendment-protected activity.

55. As-applied to Plaintiff, the Orders impose a substantial burden upon Plaintiff's free exercise of religion, subjecting it – and its members – to criminal sanctions for exercising their religious belief that they are commanded by God to congregate together for religious worship in the building provided by God and dedicated to religious worship.

56. The Orders are not neutral, purporting to treat Plaintiff's religious activity differently and less favorably than other categories of activity.

57. The Orders are not generally applicable, and directly prohibit Plaintiff's Gathering and religious services.

## COUNT II – (U.S. CONST., FIRST AND FOURTEENTH AMENDMENT – RIGHT TO ASSEMBLE)

58. Plaintiff incorporates all other Paragraphs of this Complaint as if fully set forth herein.

59. As-applied to Plaintiff, the Orders ban Plaintiff's Gatherings and other in-person religious worship services while permitting larger gatherings of other, secular, activities does not serve any legitimate, rational, substantial, or compelling governmental interest.

60. As demonstrated by its many exemptions and exceptions on the 10-people limit gatherings, there are alternative, less restrictive means the government has to achieve any interest it may have in the Orders' numerical limit on Plaintiff's gatherings.

61. In the absence of declaratory and injunctive relief, the Plaintiffs' right to freedom of religion and right to peaceably assemble will be irreparably harmed.

62. Plaintiff has no adequate remedy at law.

## COUNT III – (U.S. CONST., FIRST AND FOURTEENTH AMENDMENT – ESTABLISHMENT OF RELIGION)

63. Plaintiff incorporates all other Paragraphs of this Complaint as if fully set forth herein.

64. The prohibitions contained in the Orders of more than ten (10) people in a faith-based gathering purport to establish religion by dictating under penalties of criminals sanctions that Plaintiff, and its members, may only worship in groups of ten (10) people or fewer or online, thereby establishing a government orthodoxy for religious worship.

65. As-applied to Plaintiff, the Orders inhibit Plaintiff's religion and:

   a. Permit the government to display impermissible hostility towards Plaintiff's Gatherings that it does not display to other, secular gatherings;

  b. Show impermissible favoritism towards secular gatherings over the Plaintiff's Gatherings;

  c. Show impermissible favoritism towards religious worship gathering participants which hold state-approved religious beliefs over the Plaintiff's Gatherings;

  d. Excessively entangles the Government with the manner, style, form, practices, and customs of Plaintiff's Gatherings; and

  e. Establishes an acceptable method for Plaintiff's religious exercise, worship and Gatherings, placing a numerical limitation on the scope of how Plaintiff's religious exercise, worship and Gatherings may occur, and approving only government-mandated forms of worship.

WHEREFORE, Plaintiff respectfully requests the Court to enter judgment against Defendants as follows:

 1. Granting the Plaintiff's concurrently filed motion for a temporary restraining order;

 2. Declaring enforcement of the Orders against Plaintiff's to be unlawful and/or a violation of the Plaintiff's rights;

 3. Granting an order preliminarily, and thereafter, permanently enjoining Defendants and Defendants' officers, agents, affiliates, servants, successors, employees, and any other persons who are in active concert or participation with any of the foregoing persons from enforcing the Orders against Plaintiff;

 4. Entry of judgment for Plaintiff and against Defendants for deprivation of rights, including an award of damages in an amount to be determined by the Court;

5. Awarding Plaintiff's costs and attorney fees under Rule 54, 42 U.S.C. § 1988, and any/ or other applicable law; and

6. Awarding such further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Henry Elster
Henry P. Elster, #62875
101 South Hanley, Suite 1280
Saint Louis, Missouri 63105
(Telephone) (314) 727-0868
(Facsimile) (314) 727-9071
(E-mail) henry@elsterlaw.com
**Attorney for Plaintiff**

Respectfully submitted,

/s/ David J. Gregory
David J. Gregory, #63651
7733 Forsyth Blvd., #1100
Clayton, Missouri 63105
(Telephone) (314) 727-7220
(Facsimile) (314) 727-7230
**Attorney for Plaintiff**

## VERIFICATION AND DECLARTION UNDER 28 U.S.C. § 1746

I declare under penalty of perjury that the foregoing Verified Complaint has been examined by me. I have personal knowledge of the factual claims made. I affirm and declare that the factual allegations therein are true and correct to the best of my knowledge, information and belief under penalty of perjury.

Executed this 20th day of May, 2020

_____
Matthew Sheffer
Elder, Teaching Pastor and
Authorized Signer for Plaintiff,
Church of the Word